In March, 1863, the petitioner, being elected a constable, was duly qualified and entered upon the discharge of the duties of his office. In April, 1863, he was sent to the camp of instruction as a conscript; on 5 May, 1863, he was sent to the army, where he served about six weeks. On joining the army, he received bounty, but has never received any pay; he came home on furlough until his case could be decided. A correspondence was had between Governor Vance and the Confederate authorities, which need not be set forth. On 15 January, 1864, he sued out a writ of habeas corpus.
Congress, 1 May, 1863, enacted: "In addition to the State officers exempted by the act of 1 October, 1862, there shall be exempted all Stateofficers whom the Governor of any State may claim to have exempted for the due administration of the Government and the laws thereof," etc.
Governor Vance, on 9 May, 1863, claimed to have exempted "all justices of the peace," etc., "constables who entered into bond previous to 11 May, 1863, and their successors in office," etc.
The Legislature, on 14 December, 1863, adopted and made permanent the claim which had been made by Governor Vance.
1. The receipt of bounty by the petitioner was a waiver to any claim to exemption under the act of 11 October, 1862; but, of course, it could not have the legal effect of being a waiver of any exemption to which *Page 243 
he might afterwards become entitled. Its effect is to put him in the condition of a soldier having at that time no right to exemption.
2. The next question is, Did his being placed in the military service as a conscript vacate his office of constable? or did he continue to hold that office while he was in the condition of a soldier? Absence from the country or nonuser does not per se deprive one of a public office; it may be cause of forfeiture, but the office continues until there be proper legal proceedings to put him out of it. This is well settled; 2 Bl. Com., 153.
3. The question, then, is narrowed to this: Does the act of (381) Congress, and the claim that Governor Vance made in pursuance thereof, and the act of the Legislature, embrace the case of a constable who was, at the date of the claim of the Governor, in the military service of the Confederate States; or is the exemption confined to constables who were not in the military service? The words of the act of Congress are general: "There shall be exempted all State officers whom the Governor of any State may claim," etc. The words of the Governor's claim and of the act of the Legislature are also general: "All justices of the peace, etc., constables who have given bonds previous to 11 May, 1863," etc.
I can see no ground to except from the operation of these general words State officers who were in the military service. If such was the intention, a proviso to that effect would have been made; and there is no rule of law under which it can be made by construction. I am therefore of the opinion that the petitioner is exempted.
It was suggested in the argument that the exception should be made by implication from the use of the words "shall be exempted," and it is said that the word "exempted" is restricted in its meaning to persons who are not in the military service, and "discharged" is the proper word when referring to persons who are in the military service. This distinction may obtain in military circles, but the word "to exempt" is not a technical term; it is a plain English word, and means literally "to take out of or from," and its ordinary signification is "to free from, not be subject to," any service or burthen to which others are made liable; as, to exempt from military service, to exempt from taxation; and it is a settled rule of construction, words in a statute are to be construed according to their ordinary meaning, unless there is something to show they are used in a different sense. The courts (382) cannot expect Congress to take notice of the military parlance, and require, in order to express the intention, that all the State officers whom the Governor may claim as necessary, etc., shall be free from military service, that this particular mode of expression shall be adopted, to wit: "All State officers not in the military service shall be exempted, and all who are in the military service shall be discharged, whom the Governor *Page 244 
may claim as necessary," etc. The meaning as expressed by the act of Congress to exempt all State officers is clear; and the words used to express the intention are appropriate according to their well-known signification.
It was further suggested that from the nature of the subject the act should be so construed as not to embrace State officers who are in the military service; and it is assumed that Congress did not intend to take any one out of the army. There is the same reason to assume that Congress did not intend to keep any one out of the army! It may be said, on the other side, the power of Congress to conscript was seriously questioned, and especially its power to conscript State officers, who were necessary for the due administration of the Government and the laws thereof, and this extended exemption was a concession designed to avoid all conflict with the States, and the use of the peculiar words, "whom the Governor of any Statemay claim to have exempted," countenances this idea. But these are conjectures on political questions into which the courts are not at liberty to enter.
The cases of Irvin, Meroney, and of Bryan, ante, 1, in which it is held that the conscription acts do not embrace persons already in service, and of Guyer, ante, 66, and others, in which it is said that the exemption act of 11 October, 1862, did not embrace mechanics between 18 and 35, who were already in service, may seem at first blush to oppose the (383) conclusion to which I have arrived; but upon examination, these cases will be found negatively to support it. The general words of the conscription acts embrace all white males between 18 and 35 and between 35 and 45, and it is only by reference to the nature of the subject and the context, that persons already in service were excluded. The natureof the subject, for there was no occasion to conscript persons in service for three years or the war; they were soldiers already. The context, for the provision as to camps of instruction, calling the men into service at different times, etc., were not applicable to persons already in service.
So the general words of the exemption act of 11 October, 1862, embraced all shoemakers, blacksmiths, etc., and it is only from the context that shoemakers, blacksmiths, etc., already in service were excluded. These were required to be "actually employed in their respective trades at the time,"
which, in reference to those between 18 and 35, was held to be at the passage of the act, in order to fit it to the conscription act of April, 1862; and in reference to those between 35 and 45, or who afterwards come to the age of 18, "at the time" is taken to mean when called into service; and this actual employment in their respective trades could have no application to men who were in the military service, and so could not be actually employed at their trades. *Page 245 
But in our case we have seen there is nothing in the subject-matter which the courts can judicially take notice of, and there is nothing in the context to control the general words, so as to exclude State officers who may be in the military service, supposing the position to be correct, of which there can be no doubt, that being in the military service does notper se deprive one of his office.
My conclusion is also supported by the decision of Judge Haliburton, of the District Court of the Confederate States, In re Lane, where it is held that a soldier who becomes a mail contractor is embraced (384) by the act of Congress of 17 April, 1863, and is exempted from military service; and by the decision of Judge Meredith, In re Brooking
(which I noticed briefly referred to in a newspaper), where it is held that a soldier who, while in the service, was elected a justice of the peace and regularly qualified as such, was exempted.
It is thereupon considered by the me that Joseph Bradshaw be forthwith discharged, with leave to go wherever he will; the costs, to be taxed by the clerk of the Superior Court of Alamance County, will be paid by W. A. Albright. The clerk will file the papers and give copies.
At Richmond Hill, 3 February, 1864.
Cited: In re Sowers, post, 386.